Kevin G. Little, SBN 149818
Michelle L. Tostenrude, SBN 290121
**LAW OFFICE OF KEVIN G. LITTLE**
Post Office Box 8656
Fresno, California 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
E-Mail: kevin@kevinlittle.com

Attorneys for Plaintiff Nicholette King-Rabetsimba

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| DR. NICHOLETTE KING-RABETSIMBA, an individual;<br><br>            Plaintiff(s),<br><br>     v.<br><br>ALIXA RX, LLC, a Delaware limited liability company,<br><br>            Defendant(s). | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>California Fair Employment and Housing Act<br>- Race Discrimination<br>- Retaliation<br>California Labor Code<br>- Labor Code § 1198.5<br>- Labor Code § 98.6<br><br>JURY TRIAL DEMANDED |

TO THE HONORABLE COURT:

Plaintiff, Dr. Nicholette King-Rabetsimba, through her undersigned counsel, hereby makes the following allegations against the defendant, Alixa RX, LLC. Plaintiff seeks compensatory and punitive damages and related relief authorized by law based on the within allegations.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction in the matter pursuant to 28 U.S.C. §§ 1332, as this proceeding arises under state law between parties of diverse citizenships and where the amount in controversy exceeds the jurisdictional amount of $75,000.

2. This Court has venue in this matter pursuant to 28 U.S.C. § 1391(b), as a substantial part of the acts and omissions giving rise to this proceeding occurred in this judicial district.

COMPLAINT FOR DAMAGES

3.     Plaintiff has fulfilled the jurisdictional prerequisites to filing suit, including her obtaining a right to sue letters from the California Department of Fair Employment and Housing, ("DFEH") and filing this action within the times required in those case closure/right to sue letters.  Specifically, Plaintiff submitted a September 25, 2017 complaint, No. 849235-217199, which was initially closed on February 14, 2018, but then reopened and closed after an appeal on April 10, 2019.  Plaintiff also submitted another complaint on November 28, 2018, No. 201807-03013925, which was closed on November 26, 2019.

## PARTIES

4.     Plaintiff Dr. Nicolette King-Rabetsimba (hereinafter "Plaintiff") brings this action in an individual capacity. Plaintiff, who happens to be an African-American female, resides in the County of Fresno, State of California.  Plaintiff grew up in Fresno and graduated from Clovis West High School.  After high school, Plaintiff completed her bachelor's degree in Biotechnology at UC Davis, her master's degree in Biotechnology at Johns Hopkins University, and her doctorate in Pharmacy at University of Maryland, Baltimore.  Plaintiff has been a licensed pharmacist in the State of California since 2006.  Plaintiff is currently employed as a consultant for the California Department of Public Health and serves on the State of California's Incident Response Team. Plaintiff is also an adjunct professor at Fresno Pacific University.

5.     Defendant Alixa RX, LLC ("Defendant") is a Delaware corporation with its principal place of business situated in the Collin County, State of Texas.  Defendant does business from many locations nationwide, including its Fresno, California located at 4727 W. Shaw Avenue, Fresno, CA 93722.  At all times herein, Defendant was an "employer" under the definition set forth in California Government Code Section 12926, subdivision (d).

## FACTUAL ALLEGATIONS

6.     Plaintiff who was employed by Defendant at from October 30, 2013 until June 12, 2018.  During her employment, Plaintiff was one of only two African-American pharmacists who worked at Defendant's Fresno location, and Plaintiff's only other African-American coworker was discharged in about January 2017.

7.   During the first three years of Plaintiff's employment, she was excelling in her work.  Plaintiff worked for Defendant as a Staff Pharmacist, and she was making approximately $75 per hour, plus benefits.  Plaintiff served intermittently as Interim Pharmacy Manager, and her performance was well reviewed.

8.   However, in early to mid-2016, Defendant changed its Fresno management team, with Darlene Ervin becoming the General Manager and Amit-Kumar Jana becoming the Pharmacy Supervisor.  Plaintiff's work environment immediately became discriminatory and hostile.  In approximately May 2016, Plaintiff first sought consideration for an open position as a Clinical Consultant, but her repeated requests were ignored.  Plaintiff's application was never considered; instead, Sophia Kim, a younger, newly licensed, non-African-American pharmacist Plaintiff had trained was selected for the Clinical Consultant position.  When Plaintiff complained about this selection and her not even being considered for the Clinical Consultant position, she was told that the younger pharmacist selected was being given the position as a "training opportunity."  Plaintiff's request for a similar training opportunity was ignored, and she was merely advised that if another similar opportunity arose that she would be considered.  Plaintiff again complained about how the Clinical Consultant selection process had been handled.

9.   On June 7, 2016, Plaintiff was berated in the workplace by Soraya Samin, another non-African-American pharmacist who had demonstrated, longstanding anger management issues.  Plaintiff complained about this incident, and there were witnesses who were able to verify her account.  Moreover, the incident was also recorded on the Defendant's video surveillance system.  Plaintiff was so distraught by the incident that she took family medical leave right afterwards.

10.   Nonetheless, in response to her complaint, Plaintiff herself was written up on June 22, 2016, on the false basis that she was the one who had engaged in unprofessional conduct.  Plaintiff's write-up threatened her with possible termination.  Ms. Samin did not receive a similar write-up.  Plaintiff refused to sign the write-up, and she also submitted a written response

disputing its findings that included complaints about this issue was being handled. Defendant never responded to Plaintiff's complaint.

11. In the aftermath of these incidents, Plaintiff requested a complete copy of her personnel file on December 23, 2016, and plaintiff did not receive a copy of her file until no sooner than January 31, 2017, after she repeated her initial request. When she finally received her file, Plaintiff was chagrined to see that her write-up from the June 7, 2016 was still in her personnel file, despite its factual inaccuracy and her detailed responsive complaint. Plaintiff had been led to believe that this inaccurate write-up had been removed from her file. Plaintiff demanded that any adverse documentation related to the June 7, 2016 incident be removed, but this further complaint only resulted in minor changes being made to her write-up.

12. Concurrent with her complaints of discriminatory treatment and her demand for her personnel file, Plaintiff's conditions of employment changed. Although she had worked a 32-hour work week since shortly after the commencement of her employment, Plaintiff was informed that increased workload would require her to work an additional eight hours per week. However, Defendant had other non-African-American pharmacists who continued to work on 32 hours despite the alleged increased workload, and the Defendant had recently reduced its Fresno pharmacy staff. It was also well known to the Defendant that Plaintiff had three young children for whom she was the primary caretaker, and she also had secondary positions as a Clinical Pharmacist at Community Regional Medical Center and adjunct faculty position at Fresno Pacific University.

13. On June 3, 2017, Rene Martinez, another non-African-American pharmacist angrily told plaintiff "not to fuck with" her and also called Plaintiff a "bitch" in the workplace. This misconduct occurred in front of numerous other staff members and was in no way provoked. Plaintiff immediately and repeatedly complained about this incident and sought management's intervention and corrective action. Promises to perform "an investigation" went unfulfilled. There were no consequences to Ms. Martinez, the perpetrating pharmacist.

14. In stark contrast to the lenient treatment of those who transgressed Plaintiff, she found herself increasingly under the microscope after her 2016 and 2017 protected activities.

Plaintiff had her work reviewed and audited more frequently that her colleagues, even though she had no history of performance problems.  Plaintiff also was routinely berated and ostracized in her workplace, on a regular basis.

15. On or about September 25, 2017, Plaintiff filed a complaint with the DFEH, contending that she had been subjected to race and gender discrimination and retaliation for asserting her rights under the California Family Rights Act.  Defendant defended its position against Plaintiff's allegations by supplying false and misleading information to the DFEH, which Plaintiff pointed out in her responsive submissions.

16. After plaintiff's 2017 DFEH complaint, Defendant continued to engage in a pattern of pervasive retaliatory and discriminatory conduct. Plaintiff continued to have her performance scrutinized more closely than her colleagues, and alternately was berated and ostracized.  Plaintiff was counseled and reprimanded for giving work colleague with whom she was friendly a momentary "side hug" in the workplace on December 1, 2017, although her colleagues all behaved likewise without any adverse consequences.

17. On March 23, 2018, Plaintiff sent a standard inquiry to General Manager Darlene Ervin regarding a billing issue. Ms. Ervin responded with an email copied to numerous staff members stating, "Nicholette, as a pharmacist you can create the form. It takes seconds and can be done by anyone. As the pharmacist there now, please proceed and focus on the patient!" This angry and public response was totally uncalled for, and, neither Plaintiff nor any other pharmacist had ever been trained to create a billing form; this had always been done by the billing department. No other pharmacists were openly condescended and undermined before their colleagues in this manner.

18. Plaintiff also complained that Ms. Ervin's response constituted an attempt by a non-pharmacist to supervise a pharmacist, which was in violation of California law.  Plaintiff responded to Ms. Ervin and management with a detailed complaint that cited to the various statutes and regulations that prohibited non-pharmacist supervision of pharmacists, and even made such conduct a misdemeanor.  There was never any meaningful response to this complaint.

KGL

19. On or about March 29, 2018, Plaintiff was suspended without pay in relation to an alleged prescription error, but she was not the responsible pharmacist. Specifically, on or about March 6, 2018, there had been an error in filling a prescription medication order. On March 12, 2018, Pharmacy Manager Amit-Kumar Jana blamed Plaintiff and documented Plaintiff as the sole pharmacist responsible on an occurrence report. However, Plaintiff learned that other pharmacist Akemi Yamashita, had performed the first pharmacist review and final pharmacist reviews of the computerized prescription order, whereas the prescription that Plaintiff had reviewed had been cancelled before finalization. Ms. Yamashita's involvement was documented by Defendant's electronic prescription workflow records and on the prescription label of the drug product that was erroneously filled. Mr. Jana was already aware that Plaintiff was not responsible for the prescription error at the time her wrote his occurrence report, but his report did not document any other pharmacists' role.

20. Upon Plaintiff's return from the suspension, on or about April 5, 2018, she was issued a first and final written warning by Mr. Jana. Plaintiff was the only pharmacist suspended or given a first and final warning, even after she provided documentation to the Defendant that another pharmacist, Ms. Yamashita, was responsible for the medication error. Only after Plaintiff's complaint was Ms. Yamashita given a less severe warning, which was not accompanied by a suspension. Plaintiff was also falsely told that the prescription error resulted in a patient's death.

21. After the incident that culminated in her suspension and in light of the progression of incidents since 2016, Plaintiff was in fear that she might be again set up to be responsible for someone else's medication error or misconduct. Plaintiff was worried that she could potentially lose her license or not be able to find another position if she was blamed for another prescription error or other misconduct. This concern was heightened by Mr. Jana's questionable practices pertaining to Norco prescriptions and the increasingly hostile environment Plaintiff was facing. Plaintiff took leave for an extended period of time due to this stress.

22. As a result of this pattern of discrimination and harassment, and in an effort to do what she felt was necessary to save her license and career, Plaintiff resigned from the

Defendant's employ on June 12, 2018.  Plaintiff also filed a second complaint with DFEH on November 28, 2018, alleging that her June 2018 reprimand, suspension, and forced resignation were all due to retaliation for engaging in protected activity, including her prior complaints of discrimination.

23. Plaintiff suffered greatly as a result of the foregoing.  Plaintiff was unable to find comparable employment for four months, and Plaintiff's current position with the California Department of Public Health pays about $40,000 a year than what she earned with the Defendant.  Plaintiff's current schedule also does not permit her to continue her adjunct faculty work at Fresno Pacific University.  Plaintiff also has had to take anti-anxiety medication to deal with the stress of her situation.  Plaintiff also has been chronically depressed and unable to perform her customary personal and family activities.  Plaintiff also has had to obtain legal counsel to assert her rights as set forth herein.

## CAUSES OF ACTION

### First Cause of Action

### California Fair Employment and Housing Act - Race Discrimination

24. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

25. California law prohibits discrimination based in employment, either because of an employee's race or because an employee is not of a race or races treated more favorably. California Government Code § 12940(a).  As a person who is a racial minority, Plaintiff is protected against race discrimination under California law, i.e., she has a right not to be treated inferiorly than those or other races based in substantial part of their or her race.

26. Plaintiff is entitled to invoke her protection against race discrimination under the California Fair Employment and Housing Act because she made a timely administrative complaints and files this action timely after receiving her right to sue letter.

27. Plaintiff is a protected employee under the California Fair Employment and Housing Act because she worked for Defendant as an employee in the State of California, and Defendant is an employer for purposes of this law.

28. Plaintiff performed her duties well at all pertinent times, as detailed above, and therefore she should not have been subject to any adverse employment action based upon her merits.

29. On a continuing basis between early 2016 and her June 12, 2018 resignation, and as detailed above, Plaintiff suffered adverse employment actions, including (a) being subjected to pervasive harassment and discrimination creating a hostile environment, which was based in substantial part upon her race, (b) being reviewed unfairly adversely based in substantial part upon her race, (c) being denied pay and benefit increases to which she should have been entitled based in substantial part upon her race, (d) being threatened with termination based in substantial part upon her race, and (e) being pressured to resign based in substantial part upon her race.

30. Comparator employees not in Plaintiff's protected class and working under analogous conditions were treated more favorably. Specifically, the non-African-American employees of Defendant were not harassed, reviewed adversely, threatened with termination, or pressured to resign.

31. There is a sufficient causal connection between Plaintiff's adverse employment actions and her race. As alleged above, Plaintiff is informed and believes that Defendant's mistreatment of her is consistent with its company-wide practices of preferential treatment of employees who are not African-American.

32. Despite Plaintiff's repeated complaints, as detailed above, Defendant failed to intervene to prevent her from being discriminated on the basis of her race, as required by California Government Code § 12940(k).

33. As a result of the race discrimination alleged above, Plaintiff has been greatly damaged financially, as alleged above. Plaintiff also has lost future benefits to which she would have been entitled but for the above-alleged race discrimination. Plaintiff also has been damaged greatly non-economically, including suffering significant emotional distress, damage to work reputation, stress, anxiety, hopelessness, and loss of desire to engage with friends and loved ones. As a result, Plaintiff is entitled to compensatory damages, including back pay, front pay, lost benefits, and general damages. Plaintiff is also entitled to an award of punitive damages

based on Defendant's despicable conduct in mistreating her on the basis of her race. Plaintiff is also entitled to an array of statutory relief, including prejudgment interest, an award of legal fees and expenses, and other relief available under California Government Code § 12965.

34. Plaintiff also may be entitled to injunctive relief in the form of court-ordered reassignment, reinstatement and/or rehiring.

## Second Cause of Action

## California Fair Employment and Housing Act – Retaliation

35. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

36. California law prohibits retaliation against an employee based on her making a complaint protected by the Fair Employment and Housing Act. California Government Code § 12940(h). As a person who made complaints of mistreatment based on her protected characteristics and activities, Plaintiff is protected against retaliation under California law.

37. Plaintiff is entitled to invoke her protection against retaliation under the California Fair Employment and Housing Act because she made a timely administrative complaint and files this action timely after receiving her right to sue letter.

38. Plaintiff is a protected employee under the California Fair Employment and Housing Act because she worked for Defendant as an employee in the State of California, and Defendant is an employer for purposes of this law.

39. Plaintiff performed her duties well at all pertinent times, as detailed above, and therefore she should not have been subject to any adverse employment action based upon her merits.

40. On a continuing basis between early 2016 and her June 12, 2018 forced resignation, and as detailed above, Plaintiff suffered adverse employment actions, including (a) being subjected to pervasive harassment and discrimination creating a hostile environment, which was based upon her protected complaints, (b) being reviewed unfairly adversely based in substantial part upon her protected complaints, (c) being denied pay and benefit increases to which she should have been entitled based in substantial part upon her protected complaints, (d)

being threatened with termination based in substantial part upon her protected complaints, and (e) being pressured to resign based in substantial part upon her protected complaints.

41. Comparator employees not in Plaintiff's protected class and working under analogous conditions were treated more favorably. Specifically, the non-complaining employees in Defendant's administrative personnel, were not harassed, reviewed adversely, threatened with termination, or pressured to resign.

42. There is a sufficient causal connection between Plaintiff's adverse employment actions and her protected complaints. As alleged above, Plaintiff is informed and believes that Defendant's mistreatment of her is consistent with its company-wide practices of retaliating against complaining employees.

43. Despite Plaintiff's repeated complaints, as detailed above, Defendant failed to intervene to prevent her from being discriminated on the basis of her prior protected complaints, as required by California Government Code § 12940(k).

44. As a result of the retaliation alleged above, Plaintiff has been greatly damaged financially, as alleged above. Plaintiff also has lost future benefits to which she would have been entitled but for the above-alleged race discrimination. Plaintiff also has been damaged greatly non-economically, including suffering significant emotional distress, damage to work reputation, stress, anxiety, hopelessness, and loss of desire to engage with friends and loved ones. As a result, Plaintiff is entitled to compensatory damages, including back pay, front pay, lost benefits, and general damages. Plaintiff is also entitled to an award of punitive damages based on Defendant's despicable conduct in mistreating her on the basis of her race. Plaintiff is also entitled to an array of statutory relief, including prejudgment interest, an award of legal fees and expenses, and other relief available under California Government Code § 12965.

45. Plaintiff also may be entitled to injunctive relief in the form of court-ordered reassignment, reinstatement and/or rehiring.

**Third Cause of Action**

**Failure to Provide Personnel Records - California Labor Code § 1198.5**

46. Plaintiff incorporates the foregoing paragraphs as if set forth herein.

47.     California law entitles any current or former employee to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee.  California Labor Code § 1198.5.

48.     As a person who requested her personnel records on December 23, 2016, Plaintiff is protected under section 1198.5.

49.     As alleged above, Defendant failed to comply with its statutory obligation to produce all of the requested personnel files within 30 days of their being requested.

50.     Plaintiff is entitled to payment of a statutory penalty as an aggrieved employee, in addition to an award of costs and attorney's fees.  The Court may also order the production of all personnel records covered by section 1198.5.

### Fourth Cause of Action

### Retaliation for Protected Activity – California Labor Code § 98.6

51.     Plaintiff incorporates the foregoing paragraphs as if set forth herein.

52.     California law protects any employee from being the subject of reprisal due to her asserting rights established or protected under the California Labor Code.  *See* Cal. Labor Code § 98.6.

53.     On December 23, 2016, Plaintiff asserted her rights to inspect and receive a copy of her personnel records under California Labor Code § 1198.5.  Sometime shortly after January 31, 2017, Plaintiff also inspected her personnel file and complaint that it had not been maintained accurately.

54.     After making her request for her personnel records and inspecting her records under section 1198.5, and precisely because of that request and inspection, Plaintiff experienced retaliation, which included:  including (a) being subjected to pervasive harassment and discrimination creating a hostile environment, which was based upon her protected complaints, (b) being reviewed unfairly adversely based in substantial part upon her protected complaints, (c) being denied pay and benefit increases to which she should have been entitled based in substantial part upon her protected complaints, (d) being threatened with termination based in

substantial part upon her protected complaints, and (e) being pressured to resign based in substantial part upon her protected complaints.

55. As a result of the retaliation alleged above, Plaintiff has been greatly damaged financially, as alleged above. Plaintiff also has lost future benefits to which she would have been entitled but for the above-alleged retaliation. Plaintiff also has been damaged greatly non-economically, including suffering significant emotional distress, damage to work reputation, stress, anxiety, hopelessness, and loss of desire to engage with friends and loved ones. As a result, Plaintiff is entitled to compensatory damages, including back pay, front pay, lost benefits, and general damages. Plaintiff is also entitled to an array of statutory relief, including statutory penalties, prejudgment interest, an award of legal fees and expenses, and other relief available under California Government Code § 98.6.

**WHEREFORE, PLAINTIFF prays for a judgment as follows:**

A. For general and other compensatory damages in the amount to be proven at trial, including back pay, front pay, lost benefits, and damages for loss of quality of life and emotional distress;

B. For any applicable civil penalties;

C. For punitive damages in a sum sufficient to deter, as to the First, Second and Fourth Causes of Action;

D. For available prejudgment and post-judgment interest;

E. For attorney fees and costs herein incurred as allowable by governing law;

F. For such other and further relief as the court may deem proper.

**DEMAND FOR A JURY TRIAL**

Plaintiffs demand a trial by jury of all issue so triable in this action.

LAW OFFICE OF KEVIN G. LITTLE

DATED: November 21, 2020

Kevin G. Little
Attorney for Plaintiff
Dr. Nicholette King-Rabetsimba

COMPLAINT FOR DAMAGES                                                                 12